**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL STEPHEN BUSTIN<br>1180 Sewell Lane<br>Rydal, PA 19046<br><br>                    Plaintiff,<br>          v.<br><br>ABERCROMBIE & FITCH CO.<br>6301 Fitch Path<br>New Albany, Ohio 43054<br><br>                    Defendant. | :  CIVIL ACTION<br>:<br>:<br>:  No. _____ **10 ~1675**<br>:<br>:  JURY TRIAL DEMANDED<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

FILED
APR 15 2010
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## CIVIL ACTION COMPLAINT

Plaintiff Michael Stephen Bustin, by and through his undersigned counsel, hereby avers as follows:

### I.   Introduction

1.      Plaintiff Michael Stephen Bustin (hereinafter "Plaintiff") is a 53-year old jet pilot who was unlawfully terminated from his position as a corporate pilot for Defendant Abercrombie & Fitch Co. (hereinafter "Defendant") due to his age.

2.      Plaintiff had an exemplary performance record with Defendant from the inception of his employment in February of 2008 to his sudden and baseless termination in December of 2009, and was responsible for piloting Defendant's Gulfstream G-5 corporate jet.

3.      Defendant terminated Plaintiff's employment (and the employment of several other older jet pilots) with the express intention of hiring younger pilots who were more in keeping with Defendant's corporate image, which, by Defendant's own admission, emphasizes a " . . . youthful all-American lifestyle."

## II.   Jurisdiction and Venue

4.    The Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of such jurisdiction to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

5.    The United States District Court for the Eastern District of Pennsylvania may exercise original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights. The Court may also maintain supplemental jurisdiction over any state law claims set forth herein or later added pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to the claim(s) within the Court's original jurisdiction that they form part of the same case or controversy.

6.    Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant conducts business in this judicial district (including but not limited to the operation of retail stores in Exton, King of Prussia, Langhorne, and Willow Grove) and/or because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III.   Parties

7.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.    Plaintiff is an adult individual and citizen of the United States with an address as set forth above.

9.    Plaintiff's date or birth is February 6th, 1957.

10.    Plaintiff is currently 53 years of age.

11.    At the time of his termination in December of 2009, Plaintiff was 52 years of age.

12.    Plaintiff holds an airline transport pilot's license and is a highly experienced jet pilot with extensive training and flight time on a variety of jet aircraft, including but not limited to the Gulfstream G-5.

13.    Defendant is a Delaware corporation with an address as captioned above.

14.    Defendant is a specialty retailer operating stores and websites under several trade names (including Abercrombie & Fitch, Abercrombie, Hollister, RUEHL, and Gilly-Hicks) selling casual sportswear apparel, including but not limited to knit and woven shirts, graphic t-shirts, fleece, jeans, and woven pants, shorts, sweaters, outerwear, personal care products and accessories for men, women and children, ladies' sleepwear and underwear, and at-home products.

15.    Defendant operates 1,125 stores in the United States, Canada and the United Kingdom.

16.    Defendant has stated publicly that its corporate and marketing image emphasizes a "youthful all-American lifestyle."

17.    At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom was in the scope of his or her employment at all times relevant herein.

18.    Defendant is an "employer" within the meaning of the Age Discrimination in Employment Act because it is engaged in an industry affecting commerce and because it maintains or maintained twenty (20) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

19.    Between February of 2008 and December of 2009, Plaintiff was a W-2 employee of several management companies under contract to Defendant (most recently an entity known as

3

"Jet Aviation," a subsidiary of General Dynamics Company) and was paid by the aforesaid management companies but assigned to perform work exclusively for and under the direction of Defendant.

20.    Between February 2008 and December of 2009, Defendant was an employer of Plaintiff and Plaintiff was an employee and agent of Defendant:  (a) because Defendant maintained full control over the manner and means by which Plaintiff's work as a jet pilot was to be accomplished and the locations where that work was to be carried out (including but not limited to the locations he was to fly to and from, the passengers he was to carry, and the times he was to fly Defendant's jet);  (b) because Defendant provided the tools and instrumentalities used by Plaintiff in the performance of his work (including the Gulfstream G-5 jet Plaintiff was assigned to pilot); (c) because Defendant had the right to assign additional projects or duties to Plaintiff; (d) because Defendant provided Plaintiff with no discretion over the hours and times he was to work; (e) because the operation of Defendant's jet was a regular part of Defendant's business; and (f) because of additional factors demonstrating Defendant's control over the work performed by Plaintiff.

## IV.    Procedural and Administrative Requirements

21.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

22.    Plaintiff has satisfied the procedural and administrative requirements for proceeding under the Age Discrimination in Employment Act as follows:

      a.    On or about January 18th, 2010, Plaintiff filed a timely written charge of discrimination (No. 532-2010-00664) against Defendant with the Philadelphia office of the Equal Employment Opportunity Commission alleging age discrimination;

b.   The instant action is timely because it is initiated at least sixty (60) days after the filing of Plaintiff's administrative charge as required by the ADEA;

c.   Plaintiff also timely cross-filed the aforementioned charge of discrimination with the Pennsylvania Human Relations Commission;

d.   Plaintiff has exhausted his federal administrative remedies as to the allegations of the instant Complaint.

## V.   **Factual Background**

23.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

24.   Plaintiff is over 40 years of age and a member of the class of persons protected by the Age Discrimination in Employment Act (ADEA).

25.   Plaintiff is fifty-three years old.

26.   Plaintiff worked for Defendant as a jet pilot beginning in February of 2008 at a salary of $1200.00 a day (working an average of five days a week).

27.   Plaintiff did an outstanding job for Defendant.

28.   Plaintiff never received a complaint regarding his work, and indeed carried out his work in an exemplary fashion at all times during his employment with Defendant.

29.   Plaintiff's work with Defendant was so stellar, in fact, that Defendant paid an unprecedented amount of money to train Plaintiff on the Gulfstream G5 corporate jet.

30.   Plaintiff regularly carried high-ranking agents of Defendant as passengers (including CEO Michael Jeffries and Matthew Smith, Jeffries' life partner), flying them to and from various business-related meetings and other functions.

31.     Plaintiff's position gave him ample opportunity to come into personal contact with Smith and Jeffries.

32.     Smith and Jeffries regularly made disparaging and exclusionary comments about older individuals and made it clear to Plaintiff that Defendant preferred younger people as employees, in keeping with its "young" corporate image.

33.     Defendant has publicly stated (in 10-K's and other filings with the Securities and Exchange Commission) that it emphasizes a " . . . youthful all-American lifestyle."

34.     Jeffries has been quoted in the national press admitting that Defendant prefers younger customers and employees and is deliberately exclusionary.

35.     By way of example, in a January 2006 interview with Salon.com, Jeffries publicly stated that Defendant " . . . go[es] after the attractive all-American kid . . . A lot of people don't belong [in our clothes] and they can't belong. Are we exclusionary? Absolutely."

36.     In the fall of 2005, Jeffries advised *Time* Magazine's online edition that he prefers to hire employees as young as the college-aged customers he seeks to attract.

37.     The foregoing comments are representative of Jeffries' attitude (and the attitude of Defendant) toward older individuals.

38.     Jeffries regularly makes comments of this nature in public and in private.

39.     On December 21, 2009, Plaintiff and another pilot were taken off of a planned flight without warning, sent home without explanation, and told not to return.

40.     Plaintiff's employment was summarily terminated on December 21, 2009.

41.     Smith and Jeffries were responsible for the termination of Plaintiff's employment.

42.     Plaintiff was replaced by a 32 year old pilot, Alex Schube, who was not as qualified or experienced as Plaintiff.

43.    Plaintiff's age was the sole reason for his termination.

44.    Upon information and belief, Defendant terminated the employment of several older pilots at or during the time of the Plaintiff's employment.

## COUNT ONE
## VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

45.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.    Plaintiff is over the age of 40 and therefore within the class of persons protected by the Age Discrimination in Employment Act (ADEA).

47.    Defendant terminated Plaintiff and subjected him to other adverse employment actions because of his age.

48.    As a direct and proximate result of the foregoing discrimination, Plaintiff suffered the damages set forth herein.

49.    Defendant's violations of the ADEA were willful.

## *AD DAMNUM* CLAUSE / PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order providing that:

A.    Defendant is to be permanently enjoined from discriminating against Plaintiff and other employees on the basis of age;

B.    Defendant is are to be prohibited from maintaining its unlawful policy of firing or refusing to hire individuals because of their age, and is to be ordered to take steps to increase the average age of its workforce (in which older individuals are underrepresented);

C.    Defendant is to be ordered to promulgate an effective policy against age discrimination and to adhere thereto;

D.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

Defendant's unlawful actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, commissions, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded all pay and benefits unlawfully withheld from the date he first suffered discrimination at the hands of Defendant until the date of verdict;

E.    Plaintiff is to be awarded actual damages;

F.    Double damages are to be awarded for willful violations of the ADEA;

G.    Plaintiff is to be accorded any and all other equitable and legal relief the Court deems just, proper, and appropriate;

H.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law;

I.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law, as mandated by the decision of the Third Circuit Court of Appeals in *Gagliardo v. Connaught Laboratories,* 311 F.3d 565, 570-71 (3d Cir. 2002), and to reflect the tax consequences thereof;

J.    The Court is to maintain jurisdiction over the instant action to ensure Defendant's compliance with its Orders therein;

K.    The Court will grant such additional legal and/or equitable relief as it deems necessary, just, and/or appropriate;

L.    Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

TIMOTHY M. KOLMAN AND ASSOCIATES

By:   /s/ Timothy M. Kolman, Esquire
      Timothy M. Kolman
      Wayne A. Ely
      Attorneys for Plaintiff
      414 Hulmeville Avenue
      Penndel, PA 19047
      (215) 750-3134

April 15th, 2010